## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY**<br>**231 SAINT ASAPHS ROAD, SUITE 100**<br>**BALA CYNWYD, PA 19004**<br><br>    **and**<br><br>**ALLSTATE INSURANCE COMPANY**<br>**2775 SANDERS ROAD**<br>**NORTHBROOK, IL 60062**<br><br>    **and**<br><br>**SAFECO INSURANCE COMPANY OF AMERICA**<br>**175 BERKLEY STREET**<br>**BOSTON, MA 02116**<br><br>    **and**<br><br>**STATE FARM FIRE & CASUALTY COMPANY**<br>**ONE STATE FARM PLAZA**<br>**BLOOMINGTON, IL 61710**<br><br>                  **Plaintiffs**<br><br>    **v.**<br><br>**APPLE INC.**<br>**1 INFINITE LOOP**<br>**MS: 38-3TX**<br>**CUPERTINO, CA 95014**<br><br>Serve on: *Resident Agent*<br>CT Corporation System<br>818 West Seventh Street, Suite 930<br>Los Angeles, CA 90017<br><br>                  **Defendant** | **Case No.: 1:20-CV-00651**<br><br>**Trial by Jury Requested** |

## COMPLAINT

Plaintiffs, Philadelphia Indemnity Insurance Company, Allstate Insurance Company, Safeco Insurance Company of America and State Farm Fire & Casualty Company (collectively, "Plaintiffs"), by and through their attorneys, James D. Skeen, Terry L. Goddard Jr., and Skeen & Kauffman, LLP, hereby submit their Complaint and Jury Demand against Defendant, Apple Inc., and in support thereof aver as follows:

## PARTIES

1.      Plaintiff, Philadelphia Indemnity Insurance Company ("PIIC") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 231 Saint Asaphs Road, Suite 100, Bala Cynwyd, PA 19004. At all times relevant hereto, PIIC was duly authorized to engage in the business of insurance in Maryland.

2.      Plaintiff, Allstate Insurance Company ("Allstate") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 2775 Sanders Road, Northbrook, IL 60062. At all times relevant hereto, Allstate was duly authorized to engage in the business of insurance in Maryland.

3.      Plaintiff, Safeco Insurance Company of America ("Safeco") is a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business located at 175 Berkley Street, Boston, MA 02116. At all times relevant hereto, Safeco was duly authorized to engage in the business of insurance in Maryland.

4.      Plaintiff, State Farm Fire & Casualty Company ("State Farm") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at One State Farm Plaza Bloomington, IL 61710.   At all times relevant hereto, State Farm was duly authorized to engage in the business of insurance in Maryland.

5.      At all times relevant hereto, PIIC provided property insurance to Severn House Condominium Association ("Severn House" or the "PIIC Subrogor") in connection with its properties located  on  Fairview Avenue, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates, and at all relevant times.

6.      As a result of a fire that occurred on or about November 24, 2017 at the Severn House properties, a claim was made on said insurance policy and, upon payment, PIIC became subrogated to certain recovery rights and interests of the PIIC Subrogor for monies paid thereunder, including the claims giving rise to the within cause of action.

7.      At all times relevant hereto, Allstate provided property insurance to Kathleen and Mark Buckley (the "Buckleys") in connection with their property located at 774 Fairview Avenue, Unit C, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

8.      At all times relevant hereto, Allstate provided property insurance to Rosemary and Jung In Lee (the "Lees") in connection with their property located at 774 Fairview Avenue, Unit E, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

9.      At all times relevant hereto, Allstate provided property insurance to Sharon and James McInnis (the "McInnises") in connection with their property located at 774 Fairview Avenue, Unit B, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

10.      At all times relevant hereto, Allstate provided property insurance to John and Sheila Moran (the "Morans") in connection with their property located at 772 Fairview Avenue, Unit E, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

3

11.     At all times relevant hereto, Allstate provided insurance to John Moran in connection with his 1994 Freedom 35 vessel, under a policy of insurance that was in full force and effect on all relevant dates and times.

12.     At all times relevant hereto, Allstate provided property insurance to Yasmeen and Iqbal Sorathia (the "Sorathias" and, collectively with the Buckleys, the Lees, the McInnises, the Morans, and John Moran, the "Allstate Subrogors") in connection with their property located at 768 Fairview Avenue, Unit D, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

13.     As a result of the aforesaid fire, claims were made on said insurance policies and, upon payment, Allstate became subrogated to certain recovery rights and interests of the Allstate Subrogors for monies paid thereunder, including the claims giving rise to the within cause of action.

14.     At all times relevant hereto, Safeco provided property insurance to Margaret Bohl ("M. Bohl") in connection with her property located at 772 Fairview Avenue, Unit C, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

15.     At all times relevant hereto, Safeco provided property insurance to Barbara Bohl ("B. Bohl" and, collectively with M. Bohl, the "Safeco Subrogors") in connection with her property located at 772 Fairview Avenue, Unit D, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

16.     As a result of the aforesaid fire, claims were made on said insurance policies and, upon payment, Safeco became subrogated to certain recovery rights and interests of the Safeco Subrogors for monies paid thereunder, including the claims giving rise to the within cause of action.

17.     At all times relevant hereto, State Farm provided property insurance to Diane and Richard Fox (the "Foxes") in connection with their property located at 768 Fairview Avenue, Unit F, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

18.     At all times relevant hereto, State Farm provided property insurance to Lynda Jahnigen ("Jahnigen" and, collectively with the Foxes, the "State Farm Subrogors") in connection with her property located at 768 Fairview Avenue, Unit C, Annapolis, MD 21403, under a policy of insurance that was in full force and effect on all relevant dates and times.

19.     As a result of the aforesaid fire, claims were made on said insurance policies and, upon payment, State Farm became subrogated to certain recovery rights and interests of the State Farm Subrogors for monies paid thereunder, including the claims giving rise to the within cause of action.

20.     At all times relevant hereto, Defendant, Apple Inc. ("Apple" or "Defendant"), upon information and belief, was and is a California corporation with its principal place of business located at 1 Infinite Loop, MS: 38-3TX, Cupertino, CA. Apple's registered agent for service of process is CT Corporation System, 818 W 7th Street, Suite 930, Los Angeles, CA 95014.

21.     Defendant is in the business of designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programming and/or updating laptop computers, and component parts, including the Apple laptop (the "subject computer") at issue in the instant case.

## JURISDICTION AND VENUE

22.     This action is commenced in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between each of the Plaintiffs and the Defendant and the amount in controversy exceeds $75,000.00.

23.     Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## GENERAL ALLEGATIONS

24.     Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

25.     Prior to November 24, 2017, Defendant designed, manufactured, tested, inspected, assembled, marketed, sold, distributed, programmed, updated, and placed into the stream of commerce the subject computer that was equipped with an electrical system, battery system containing lithium-ion batteries, as well as a software system that was capable of being remotely updated by Defendant even after the date of purchase.

26.     Prior to November 24, 2017, Sheila Ross, the owner of the subject computer and resident of 770 Fairview Avenue, Unit C, Annapolis, MD 21403 (the "subject property"), purchased the subject computer.

27.     Prior to November 24, 2017, the subject computer had the original operating system in place, as well expected authorized updates downloaded onto the computer.

28.     Prior to November 24, 2017, Sheila Ross operated and used the subject computer in a foreseeable, normal, ordinary, and intended manner.

29.     On or about November 24, 2017, a fire erupted at the subject property as a direct result of an overheating event internal to the battery system in the subject computer.

30.     Prior to the fire, the subject computer had not been modified, changed, altered, misused or abused by Sheila Ross in any way beyond what was authorized, provided or anticipated by Defendant after it had placed the subject computer into the stream of commerce.

31.     The fire caused extensive damage to Plaintiffs' insureds' real and personal property, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses and hardship besides, for which Plaintiffs were compelled to reimburse their insureds.

32.     As a result of the aforementioned fire, Plaintiffs each sustained damages in an amount well in excess of $75,000.

## COUNT I - STRICT PRODUCTS LIABILITY

33.     Plaintiffs incorporate by reference the preceding averments as though the same were set forth at length herein.

34.     Defendant is engaged in the business of designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programming and/or updating laptop computers (where each is equipped with an operating system and software that can be updated remotely after purchase).

35.     Furthermore, Defendant specifically designed, manufactured, tested, inspected, assembled, marketed, sold, distributed, programmed, updated and placed into the stream of commerce the subject computer at issue in this case, which was itself equipped with an operating system and software that can be updated remotely after purchase.

36.     The subject computer was not improperly modified, changed, altered, misused, or abused after Defendant placed the product into the stream of commerce.

37.     Defendant knew, and intended, that the subject computer would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which said product would be utilized, including that Defendant intended to authorize, facilitate and provide necessary future updates for the operating system and software installed on the computer that might affect the operation of the subject computer.

38.     Defendant designed, manufactured, tested, inspected, assembled, marketed, sold, distributed, programmed, updated, and placed into the stream of commerce the subject computer in a defective and unreasonably dangerous condition, which ultimately led to a catastrophic failure and/or malfunction.

39.     Defendant knew, or should have known, that the computer would, and did, reach Sheila Ross without substantial change in the condition in which it was originally selected and sold.

40.     The subject computer was not altered in any manner after the product originally left the possession of Defendant (other than as authorized, recommended and/or facilitated by Defendant) that caused or contributed to the fire.

41.     Sheila Ross operated the computer in a foreseeable, normal, ordinary and intended manner at all relevant times.

42.     The fire and its resulting property damage were caused by the defective and unreasonably dangerous condition of the subject product at the time it left the hands of Defendant, including design defects, manufacturing defects, programming defects, and improper warnings and instructions.

43.     The fire and its resulting property damage were caused by the defective and unreasonably dangerous condition of the product, including design defects, manufacturing defects, programming defects, and improper warnings and instructions.

44.     The aforementioned defects, and/or unreasonably dangerous conditions, existed at the time Defendant placed the subject computer into the stream of commerce and were foreseeable then; as well as after when Defendant may have facilitated the updating of the subject computer's operating system and software.

45.     The subject computer was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

46.     The probability of injury times the gravity of injury under the design of the subject computer was and is more than the cost of an alternative reasonable design plus the diminished utility resulting from modifying the design.

47.     Common experience teaches that the fire would not have occurred in the subject computer in the absence of such a defective and unreasonably dangerous condition.

48.     The foreseeable risks associated with the design of the subject computer exceed all benefits.

49.     The defective and unreasonably dangerous conditions of the subject computer were direct and proximate causes of the damages sustained by Plaintiffs.

50.     The defective and unreasonably dangerous conditions of the subject computer proximately caused a fire to occur at the subject property, which resulted in damages to Plaintiffs; thus, Defendant is strictly liable under the common law and statutory products liability laws of Maryland, Section 402A of the Restatement (2d) of Torts; and/or Restatement (3d) of Torts.

51.     For these reasons, Defendant is strictly liable to Plaintiffs as a result of the aforementioned fire wherein Plaintiffs each sustained damages in an amount well in excess $75,000.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant in an amount well in excess of $75,000 plus costs incident to this suit, delay damages, and such other relief as this Honorable Court may deem appropriate under the circumstances.

## COUNT II – NEGLIGENCE

52.     Plaintiffs repeat the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

53.     Defendant owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programming, updating, and placing into the stream of commerce the subject computer; and breached said duty.

54.     Defendant knew, and intended, that the subject computer would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which said product would be utilized, including that Defendant intended to authorize, facilitate and provide necessary future updates for the operating system and software installed on the computer that might affect the operation of the subject computer.

55.     When the subject computer was distributed and sold, Defendant was aware that the subject computer could be updated remotely with authorized software and operating system updates, and it is likely that Defendant intended to facilitate such updates and in fact did facilitate such programming updates.

56.     The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Defendant, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

        a.      carelessly and negligently failing to design, manufacture, test, inspect, assemble, market, sell, distribute, program, update and/or place into the stream of commerce a properly functioning and defect-free computer, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b.    carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, market, sell, distribute, program, update and/or place into the stream of commerce the subject computer free from defects, including but not limited to batteries and a battery system capable of functioning in a safe and appropriate manner – originally, as well as after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

c.    carelessly and negligently failing to properly determine that the computer, including its component parts, were not in a safe condition, and free of all material defects, including but not limited to batteries and a battery system capable of functioning in a safe and appropriate manner – originally, as well as after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

d.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programing, updating and/or placing into the stream of commerce the subject computer when it knew, or should have known, that the product was unsafe and unfit for its intended use, including but not limited to batteries and a battery system that was unsafe and unfit – originally and after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

e.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programing, updating and/or placing into the stream of commerce the subject computer when Defendant knew, or should have known, that the product would be inadequate for the reasons for which it was purchased – originally and after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

f.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programing, updating and/or placing into the stream of commerce the subject computer that had unreasonably dangerous electrical components (and/or programming as to the use of such components) that caused the product to catastrophically fail and/or malfunction - originally and after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

g.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programing, updating and/or placing into the stream of commerce the subject computer that had unreasonably dangerous battery components (and/or programming as to the use of such components) that caused the product to catastrophically fail

and/or malfunction - originally and after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

h.      carelessly and negligently designing, manufacturing, testing, inspecting, assembling, marketing, selling, distributing, programing, updating and/or placing into the stream of commerce a dangerous and defective computer that Defendant knew, or reasonably should have known, exposed users to an unreasonable risk of harm - originally and after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

i.      carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, market, sell, distribute, program and/or update the subject computer prior to introducing the product into the stream of commerce and/or after facilitating authorized updates to the operating system and software of the subject computer and altering the functioning of the computer, including but not limited to the battery system;

j.      carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the product, which rendered it defective and unreasonably dangerous - originally and after Defendant may have facilitated authorized updates to the operating system and software of the subject computer;

k.      carelessly and negligently authorizing, recommending, programming and facilitating updates to the operating system and software so as to allow them to be downloaded to the subject computer which altered the functioning of the computer, including but not limited to the battery system;

l.      carelessly and negligently authorizing, recommending, programming and facilitating updates to the operating system and software that Defendant knew, or should have known, rendered the product unsafe and unfit for its intended use;

m.      carelessly and negligently authorizing, recommending, programming and facilitating updates to the operating system and software that Defendant knew, or should have known, were not free from defects and were not compatible with the computer and/or battery system already installed on the subject computer; and/or

n.      carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the authorized updates to the operating system and software and the impact on the subject computer, which rendered it defective and unreasonably dangerous at the time of sale.

57.     As a direct and proximate result of Defendant's aforementioned negligent and careless actions and/or omissions, the aforementioned fire occurred and Defendant is liable to Plaintiffs for the damages sustained.

58.     For these reasons, Defendant is liable to Plaintiffs as a result of the aforementioned fire, for which Plaintiffs each sustained damages in an amount well in excess of $75,000.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant in an amount well in excess of $75,000, plus costs incident to this suit, delay damages, and for such other relief as this Honorable Court may deem appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 10th day of March, 2020.

/s/ James D. Skeen
James D. Skeen (00010)
Terry L. Goddard Jr. (15460)
SKEEN & KAUFFMAN, LLP
1311 Cox Street
Baltimore, MD 21211
(410) 625-2252
(410) 625-2292
jskeen@skaufflaw.com
tgoddard@skaufflaw.com

Attorneys for Plaintiff