IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY,  ET AL.,**<br>　　　　　　**Plaintiffs**<br>　　v.<br>**APPLE INC.,**<br>　　　　　　**Defendant** | **Case No. 1:20-CV-00651**<br>**Related Cases:**<br>**1:20-cv-03287**<br>**1:20-cv-00709** |

**PLAINTIFFS' MOTION TO PRECLUDE TESTIMONY AT TRIAL
OF DEFENDANT'S MEMORY EXPERT, CHARLES A. WEAVER, III**

Plaintiffs move this Court for an Order precluding the testimony at trial of Defendant's purported "memory expert," Charles A. Weaver, III.  In support of this motion, Plaintiffs submit the accompanying memorandum of law, which is incorporated herein by reference.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

Dated: September 8, 2022　　　　　　s/ *Jeffrey M. Zielinski*
　　　　　　　　　　　　　　　　　　Jeffrey M. Zielinski (22112)
　　　　　　　　　　　　　　　　　　Thaddeus S. Kirk (22362)
　　　　　　　　　　　　　　　　　　Kenneth T. Levine (*pro hac vice*)
　　　　　　　　　　　　　　　　　　de LUCA LEVINE LLC
　　　　　　　　　　　　　　　　　　301 East Germantown Pike, 3rd Floor
　　　　　　　　　　　　　　　　　　East Norriton, PA 19401
　　　　　　　　　　　　　　　　　　Phone: (215) 383-0081
　　　　　　　　　　　　　　　　　　Fax: (215) 383-0082
　　　　　　　　　　　　　　　　　　jzielinski@delucalevine.com
　　　　　　　　　　　　　　　　　　tkirk@delucalevine.com
　　　　　　　　　　　　　　　　　　klevine@delucalevine.com
　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY, ET AL.,** <br> **Plaintiffs** <br> v. <br> **APPLE INC.,** <br> **Defendant** | Case No. 1:20-CV-00651 <br> Related Cases: <br> 1:20-cv-03287 <br> 1:20-cv-00709 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO PRECLUDE TESTIMONY AT TRIAL
OF DEFENDANT'S "MEMORY EXPERT," CHARLES A. WEAVER, III**

Plaintiffs submit this memorandum of law in support of their motion to preclude the testimony at trial of Defendant's purported memory expert, Charles A. Weaver, III. Apple has designated Weaver as an expert to testify, based on his purported expertise in human memory and cognition, with respect to the reliability of eyewitness testimony as it relates to Sheila Ross, the owner of the Apple laptop at issue in this case.

Weaver's opinions - despite carefully crafted language disclaiming this point - amount to nothing more than an attempt to invade the province of the jury as it relates to witness credibility. Indeed, at least four courts have precluded Weaver's memory-related testimony at trial for this very reason, and his testimony here is no different, if not worse, from that offered in those cases. This Court should preclude Weaver from testifying at trial for this reason, as well as because his opinions do not meet the standard for admissibility of expert testimony under Federal Rule of Evidence 702 and *Daubert v. Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Briefly, this case arises from a fire that occurred on November 24, 2017 at the Severn House on Fairview Avenue in Annapolis, Maryland. *See* Amended Complaint, ECF Doc. No. 29, ¶¶ 5-6. Plaintiffs assert that the fire occurred as a result of a defect in an Apple laptop that caused an internal failure in the laptop's battery system. *See id.* ¶¶ 39, 43-61, 62-68. The laptop was owned by Sheila Ross, who has testified twice via deposition in this case. Ross has testified as to numerous personal observations from the evening of the fire.

On April 27, 2022, Apple produced three expert reports, including the report of Charles A. Weaver, III (dated April 8, 2022). *See* Declaration of Jeffrey M. Zielinski ("Zielinski Decl.") ¶ 4 & Ex. A (Apple's expert disclosures), Ex. B (Weaver's expert report (hereinafter, "Weaver Report")). Apple offers Weaver as an expert to testify, based on his purported expertise in human memory and cognition, with respect to the "reliability" of eyewitness testimony. *See* Ex. B, Weaver Report at 1. The very first page of Weaver's report contains a carefully crafted disclaimer positing that "juror understanding of human memory is deeply flawed, and expert testimony can offer unique information to assist the jury without invading the province of the jury." *See id.* Weaver goes on to summarize that his report contains "opinions with respect to memory issues in eyewitness recollection, and identifies scientifically established factors that may affect the **reliability** of testimony in these cases." *See id.* (emphasis added).

In reality, Weaver's report amounts to a lengthy treatise about human memory and cognition and different factors that can affect eyewitness credibility - or "reliability" as he now likes to describe it, after being precluded numerous times for not being permitted to testify about witness "credibility." Tellingly, the summary of Weaver's opinions at pages 4-5 of his report discusses only general concepts concerning memory. *See id.* at 4-5. Nowhere in his summary

does Weaver attempt to tie these concepts to Ms. Ross personally. Nor does Ms. Ross's name or any facts related to this case appear anywhere in the summary. *See id.* Indeed, only on page 37 of this report does Weaver begin to discuss Ross's testimony in this case, yet he does not offer any opinion in his report that Ross's memory is somehow uniquely compromised. *See id.* at 37 *et seq.* Instead, he merely inserts lengthy block quotes from her deposition testimony and intersperses it with only the most basic memory-related concepts, for example that memories can change over time. *See id.* He is also often critical of Ms. Ross's personal lay "opinion" (not a memory) that the fire, which began while she was asleep, was probably caused by a malfunction of the Apple computer. *See id.* at 52-59 (criticizing the reliability of her "opinion" or "belief" as to the possible cause – which has nothing to do with her memory, as she was asleep when the fire began)

On July 27, 2022, Weaver's opinions and methodology were examined when he testified via deposition. *See* Zielinski Decl. ¶ 5 & Ex. C (July 27, 2022 deposition transcript of Charles Weaver, III, Ph.D. (hereinafter, "Weaver Tr.")). Weaver stated that he planned to testify regarding "normal processes in memory," including "factors that we know influence *not just Ms. Ross but all witnesses* . . . ." *See* Ex. C, Weaver Tr. at 31:9-21. Yet, Weaver acknowledged his testimony and opinions relate only to Ross's testimony and not to any other witness in this case. *Id.* at 22:6-10. When asked why that was, Weaver responded, "I don't know," and deferred to "the individuals who retained me," i.e., Apple's counsel. *Id.* at 22:11-14. In addition, when asked whether he had requested to review other witness's depositions in an effort to analyze factors affecting their reliability, Weaver responded only, "If I was asked to comment on the reliability of the deposition testimony they gave, ·I presume I would have done that." *Id.* at 22:19-23:3.

Although Weaver identified various "inconsistencies" in Ross's testimony, as reflected toward the end of his report, *id.* at 116:3-117:1, he later testified that he would not "offer any

3

testimony that her memory is compromised by a medical condition or anything along those lines." *Id.* at 235:4-11.  In fact, he stated he "saw no evidence that that was the case" and indicated he would not discuss such matters as (1) the effect of Ross's age or any disease on her memory or (2) dementia with respect to Ross.  *Id.* at 235:14-236:1.

As to the issue of "witness credibility," Weaver carefully attempted to create a distinction, as he did in his report,  the between the concept of witness "reliability" and witness "credibility," asserting that his testimony was limited to the former, not the latter.  *Id.* at 242:2-246:9, 255:4-262:11.  Yet, he admitted that his "job is to identify factors that helps [*sic*] the jury, as they try to determine which of [Ross's] testimony they believe to be true."  *Id.* at 27:16-20.

## II. ARGUMENT

### 1. Standard of Review

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies the requirements for admissibility.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10 (1993); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

Although Rule 702 affords a court wide latitude to admit expert testimony, such testimony

4

is generally inadmissible if it does not meet two related requirements: (1) it must be based on the special knowledge of the expert; and (2) it must be helpful to the finder of fact. *See Daubert* 508 U.S. at 589-91; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). "A district court considering the admissibility of expert testimony exercises a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

"As to relevancy, an expert's testimony is relevant if it has 'a valid scientific connection to the pertinent inquiry.'" *St. Michael's Media, Inc. v. Mayor and City Council of Baltimore*, 566 F. Supp. 3d 327, 355 (D. Md. 2021) (quoting *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019)). Put differently, the *Daubert* standard requires that opinion testimony "fit" the facts of the case. *See, e.g.*, *Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769 (D. Md. 2002) (citing *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000); *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998)).

In short, to be relevant, expert testimony "must constitute scientific knowledge that will assist the trier of fact to understand or determine a fact in issue." *St. Michael's Media*, 566 F. Supp. 3d at 354. "Further, proposed testimony that concerns matters within the common knowledge and experience of a lay person does not pass muster." *Id.* at 356 (citing *United States v. Dorsey*, 45 F.3d 809, 814 (4th Cir. 1995); *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)); *see also United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (quoting *Scott v. Sears Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986)) ("The helpfulness requirement of Rule 702 . . . prohibits the use of expert testimony related to matters which are 'obviously . . . within the common knowledge of jurors.'").

### 2. Weaver Should Be Precluded from Testifying Because His Opinions Concerning Memory Invade the Province of the Jury and Do Not Comport with Daubert Standards.

Weaver should be precluded from testifying at trial because his opinions concerning memory encroach upon the most basic function of a jury, i.e., the assessment of witness credibility. Absent "unusual circumstances," "[t]he assessment of a witness's credibility . . . is usually within the jury's exclusive purview," and "expert testimony on issues of witness credibility" is therefore inadmissible. *Lespier*, 725 F.3d at 449 (citing *Dorsey*, 45 F.3d at 815) (internal quotation marks omitted). Such unusual (and very narrow specific) circumstances have only been found to include such matters as "cross-racial identification, identification after a long delay, identification after observation under stress, and psychological phenomena as the feedback factor and unconscious transference" – and all were in the context of eyewitness facial identifications in criminal matters.[1] *United States v. Harris*, 995 F.2d 532, 535 (4th Cir. 1993). Even courts "allowing such expert testimony, however, recognize that the ultimate determination of admissibility, as with most Rule 702 evaluations, rests within the sound discretion of the trial court." *Id.* at 534. Unequivocally, "an opinion on the credibility of a witness by a psychiatrist is not allowable." *United States v. Cecil*, 836 F.2d 1431, 1442 (4th Cir. 1988); *see also United States v. $307,970.00 in U.S. Currency*, No. 4:12-CV-136-FL, 2019 WL 2173432, at *11 (E.D.N.C. May 20, 2019) (same prohibition as to psychologists).

Indeed, Weaver himself has been precluded from testifying on *no fewer than four occasions*, precisely because his proposed expert testimony regarding memory - virtually identical to the opinions he intends to offer here - were found to encroach each time upon the province of

---

[1] Weaver admitted at his deposition that his testimony in this case did not involve opinions related to "repressed memory issues" or "facial identification." *See* Ex. C, Weaver Tr. at 234:10-18.

6

the jury and usurp its function of assessing witness credibility. *See Hales v. Texas*, No. 05-07-01302-CR, 2009 WL 565713, at *3-4 (Tex. App. Mar. 6, 2009); *CNH Indus. Am. LLC v. Travelers Indem. Co.*, No. CVN12C07108EMDCCLD, 2015 WL 5145523, at *2 & n.4 (Del. Super. Ct. Feb. 19, 2015) (citing *In re Asbestos Litig.*, No. 032010JR Trial Grp., at 88 (Del. Super. Ct. Mar. 4, 2010), in which Weaver was also precluded); *Vinciguerra v. Crane Co.*, Sept. Term 2010, No. 2682, 2013 WL 10571433, at *3 (Pa. Com. Pl. Ct. Nov. 12, 2013), *aff'd sub nom. Amato v. Bell & Gossett*, 116 A.3d 607 (Pa. Super. Ct. 2015). In each case, the courts found that Weaver's proposed testimony regarding memory usurped the jury's basic function of assessing witness credibility.

The *Hales* court, for instance, noted that Weaver's proposed testimony included such things as discussion of a "study using manipulated photographs of a subject's past to depict an event which had not occurred" - *just as Weaver proposes to do in this case*. *See Hales*, 2009 WL 565713, at *3; *accord* Ex. B, Weaver Report at 30-33. That court also observed, "Weaver's testimony was 'offered purely as educational material for the jury, which is insufficient to demonstrate that the scientific principles will assist the trier of fact in this case or are sufficiently tied to the pertinent facts of the case.'" *Hales*, 2009 WL 565713, at *4 (citation omitted). The court found that "Weaver would have testified in general about memory and how it can be faulty or distorted, but he would not have tied that opinion to a material fact at issue in the case," given that he had never met with or performed any testing on the witness at issue. *Id.* Rather, the court noted, Weaver's opinions amounted to "[g]eneral statements" about memory, which would not be "helpful to the jury." *Id.* at *3.

Here, Weaver's proposed opinions are no different from those he offered in *Hales*, *CNH*, and *Vinciguerra* - despite his best efforts in his report and his deposition to paint his opinions differently – emphasizing "reliability" instead of "credibility" (presumably based on his past

7

experience of being precluded from testifying at least four times). Tellingly, the summary of Weaver's opinions at pages 4-5 of his report discusses only general concepts concerning memory. Nowhere in his summary does Weaver attempt to tie such "educational," background information to Ross or to the facts of this case generally. Nor do Ross's name or any facts related to this case appear anywhere in the summary. After reciting his qualifications and testimony experience, the next twenty-plus pages of Weaver's report consist of a general treatise about memory-related concepts. For example, Weaver cites a series of studies concerning manipulated photographs (like those referenced and precluded by the *Hales* court) in an effort to show that misleading or biased cues can affect memory retrieval. None of this discussion, however, is in any way linked to the facts of this case.

This lack of connection between Weaver's general memory opinions and the particular facts of this case is an additional reason that his opinions here do not meet the *Daubert* requirement that his opinion testimony "fit" the facts of the case. *See, e.g.*, *Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769 (D. Md. 2002) (citing *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000); *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998)). There is nothing unique at all about this case or Defendant's position that a witness (Ms. Ross) has purportedly made inconsistent statements that allow Weaver's opinions here. If his opinions are relevant here then they are relevant and "fit" every single case where there are purportedly inconsistent statements as to personal observations. There is no other "fit" between Weaver's broad memory opinions and this case.

In fact, not until page 37 of Weaver's report does he even begin to discuss Ross's testimony, and he only does so via lengthy block quotes from her deposition transcripts with minimal commentary. For example, on page 51 of his report, Weaver begins to attempt to tie

8

Ross's testimony to some of the concepts discussed in his lengthy, treatise-like discussion of general memory-related concepts, but he does so only in a cursory fashion and fills most of the space with block quotes in an apparent attempt to reference inconsistencies in her testimony. For example, when reciting Ross's recollections of the fire, he references the rather obvious proposition that "[m]emories, of course, can change over time" (due to such factors as loss of detail, reduction in the amount recalled, suggestibility, and post-event information). This is all within the common sense and knowledge of the jurors, and not an application of some scientific analysis uncommon to the average juror.

Another clear example of the lack of necessity or benefit to the jury of Weaver's possible testimony is clear from the following exchange (and there were many similar ones in the deposition, of which this is just one example):

> Q: You then go on to mention that correspondence, prior to her initial deposition, suggests she understood that the questions at that deposition were designed to implicate Apple, and she was apparently provided access to questions and exhibits prior to testifying.
> She knew that there was a lawsuit against Apple before any deposition, correct?
> A (Weaver): Correct.
> MR. SKINNER (Apple Counsel): Objection to form.
> Q: She knew that she had in fact sued Apple before that deposition, right?
> MR. SKINNER: Objection to form. Misstates facts.
> A: I don't know exactly when she knew that.
> Q: She was going to a deposition --
> A: July 16th, 2020, is the earliest email that I saw from Mr. Field.
> Q: Okay. And so, her answers [Ms. Ross's], at the deposition, you suggest, were influenced by the fact that she knew that the deposition was designed to implicate Apple, correct?
> MR. SKINNER: Objection to form. You can answer.
> A: That was the subtext of the information from the attorneys that were going to be taking her deposition.
> Q: Do you think that a jury does not understand bias?
> MR. SKINNER: Objection to form.
> A: I don't know what you mean by that…. There are all kinds of bias.
> Q: Yes. A person's testimony can be affected by many different forms of bias, both because I have a suit against somebody -- or I think that they may be

9

>responsible for the fire at my apartment -- or somebody has told me, you know, somebody caused a fire at my apartment. All of those are biases that may affect people's testimony or memory, correct?
>
>MR. SKINNER: Objection to form.
>
>A: Right.
>
>Q: Okay. So, what is it about that, that jury doesn't believe or needs your testimony to help them with?
>
>MR. SKINNER: Objection to form.
>
>A: The extent to which that then operates, and the extent to which testimony is presumed to be independent recollection as opposed to be testimony influenced by post-event information.
>
>Q: And the post-event information you're referring to here is suggestibility or bias, correct?
>
>A: Yeah. Documents that may have been presented earlier, softball questions that were alluded to.
>
>Q. Do you think that – on cross-examination, when she's cross-examined by Mr. Skinner -- that the jury is going to need your testimony to assist them in understanding the bias she may have against Apple?
>
>MR. SKINNER:· Objection to form.
>
>A: I wouldn't argue that it's biased against Apple. I would argue that her testimony was influenced by information that she learned after the event, but subsequent to her testimony -- but prior to her testimony. So after the event transpired but before she gave deposition testimony.· I'm not -- I'm not in any way arguing that she's biased against Apple. I'm arguing that her testimony would have been influenced by post-event information that was shared with her prior to her deposition.
>
>Q: And you think that the jury wouldn't appreciate that without your testimony?
>
>MR. SKINNER:· Objection to form.
>
>A: That is exactly right. I don't believe that.

*See* Ex. C, Weaver Tr. at 210:12-214:9. In this example, Weaver asserts that – without his testimony - a jury would not appreciate that Ms. Ross's testimony arguably could have been affected by the fact that an Apple computer may have caused the fire and/or that she might have a claim against Apple – even if Apple's counsel would cross-examine Ms. Ross on such possible bias or influence. This is an absurd position, and demonstrates his own disconnect with the judicial process of advocacy and cross-examination – and how such decisions are left to the common sense of the jury.

None of the various passing references to Ross's testimony are in any way tied to any substantive concepts and studies discussed at length, other than in such a general fashion and as to topics that any average juror would appreciate. Weaver did not at any point perform any testing on Ross and critically Weaver does not purport to offer any opinions that Ross's memory is somehow compromised (for example, due to age, dementia, or other illness). Rather, it appears Weaver is being offered simply for the general principle that human memories are imperfect, with the insinuation that such imperfection can impact witness credibility - despite Weaver's best efforts to distance himself from the word "credibility." Weaver admitted his "job is to identify factors that helps [*sic*] the jury, as they try to *determine which of [Ross's] testimony they believe to be true*." *See* Ex. C, Weaver Tr. at 27:16-20. This is the *very definition* of a credibility determination, which is the exclusive province of the jury. *See Credibility*, Black's Law Dictionary (11th ed. 2019) ("The quality that makes something (as a witness or some evidence) *worthy of belief*"); *Witness*, Black's Law Dictionary (11th ed. 2019) (defining "credible witness" as a "witness whose testimony is *believable*").

If Weaver is permitted to testify in this case, then a "memory expert" would be permitted in every civil and criminal case when anyone testifies as to their personal recollection of events. That would be a violation of the standard noted above in *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (quoting *Scott v. Sears Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986)): "The helpfulness requirement of Rule 702 . . . prohibits the use of expert testimony related to matters which are 'obviously . . . within the common knowledge of jurors.'"

In short, Apple should not be permitted to offer Weaver to encroach on the jury's most basic function—assessing witness credibility—in this way. If Apple wishes to undermine Ross's credibility at trial, it may do so via vigorous cross-examination, but it may not do so via so-called

11

memory expert testimony that may inject some false sense that this case and Ms. Ross's testimony is special or unique. Accordingly, this Court should preclude Weaver from testifying at trial.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter an Order precluding Charles A. Weaver, III from testifying at trial.

Respectfully submitted,

Dated: September 8, 2022         s/ *Jeffrey M. Zielinski*
Jeffrey M. Zielinski (22112)
Thaddeus S. Kirk (22362)
Kenneth T. Levine (*pro hac vice*)
DE LUCA LEVINE LLC
301 East Germantown Pike, 3rd Floor
East Norriton, PA 19401
Phone: (215) 383-0081
Fax: (215) 383-0082
jzielinski@delucalevine.com
tkirk@delucalevine.com
klevine@delucalevine.com
***Attorneys for Plaintiffs***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY, ET AL.,**<br><br>　　　　　**Plaintiffs**<br>　v.<br><br>**APPLE INC.,**<br><br>　　　　　**Defendant** | **Case No. 1:20-CV-00651**<br>**Related Cases:**<br>**1:20-cv-03287**<br>**1:20-cv-00709** |

### DECLARATION OF JEFFREY M. ZIELINSKI

I, Jeffrey M. Zielinski, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an adult individual and am competent to make this Declaration.

2. I am a member of the law firm of de Luca Levine and am counsel for Plaintiffs in this action.

3. I submit this Declaration in support of Plaintiffs' motion to preclude the testimony at trial of Defendant's purported memory expert, Charles A. Weaver, III.

4. On April 27, 2022, Defendant produced three expert reports, including the report of Charles A. Weaver, III (dated April 8, 2022).  *See* Ex. A (Apple's expert disclosures), Ex. B (Weaver's expert report).

5. On July 27, 2022, Weaver testified via deposition.  *See* Ex. C (July 27, 2022 deposition transcript of Charles Weaver, III, Ph.D.).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 8, 2022.

                                          Respectfully submitted,

                                          s/ *Jeffrey M. Zielinski*
                                          Jeffrey M. Zielinski (22112)
                                          DE LUCA LEVINE LLC
                                          301 East Germantown Pike, 3rd Floor
                                          East Norriton, PA 19401

                                          Phone: (215) 383-0081
                                          Fax: (215) 383-0082
                                          jzielinski@delucalevine.com
                                          ***Attorneys for Plaintiffs***

## **CERTIFICATE OF SERVICE**

I, Jeffrey M. Zielinski, certify that on September 8, 2022, I caused the foregoing Motion, along with the accompanying memorandum of law and Declaration of Jeffrey M. Zielinski (with exhibits), to be served on all counsel of record via the Court's ECF system.

s/ Jeffrey M. Zielinski
Jeffrey M. Zielinski
